**In re: Grand Jury SUBPOENA John Doe No. A01–209**

**No. 02–151–MG.**

United States District Court, E.D. Virginia, Alexandria Division.

April 18, 2002.

---

Richard L. Nagle, Crews & Hancock, P.L.C., Fairfax, VA, for Plaintiff.

Mark D. Lytle, Assistant United States Attorney, United States Attorney's Office, Alexandria, VA, for Defendant.

### MEMORANDUM OPINION

ELLIS, District Judge.

On or about March 6, 2002, a federal grand jury empaneled in the Eastern District of Virginia issued a subpoena to the custodian of records at an area hospital to produce certain emergency room and inpatient records in connection with an ongoing grand jury investigation. The hospital has filed a motion to quash the subpoena to testify before the grand jury, or, in the alternative, for an order compelling the disclosure of patient records. At issue is whether (i) the physician-patient privilege or (ii) privacy concerns preclude production of the patient records pursuant to the grand jury's subpoena.

### A. Physician–Patient Privilege

■ The starting point in the privilege analysis is that evidentiary privileges in federal criminal proceedings, including grand jury proceedings,[1] are governed by Rule 501, Fed.R.Evid. The Rule states, in relevant part, that the "privilege of a wit-

---

1. *See* Rule 1101(d)(2), Fed.R.Evid.

ness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." [2] And, in this respect, it appears there was no physician-patient privilege at common law.[3] In the states where the privilege exists, it is created by statute.[4] But no federal statute creates a physician-patient privilege, and the federal courts have not recognized such a privilege.[5] From this it follows that there can be no valid claim of privilege with respect to the records called for in the grand jury's subpoena and hence the motion to quash the subpoena on this ground fails.

### B. Privacy of Medical Records

■ But the analysis of the motion to quash cannot end here despite the lack of a federal physician-patient privilege, as the hospital argues that the subpoena should be quashed based on a general federal right of privacy as to medical records. Established authority indicates that federal courts recognize that patients have an interest in the privacy of their medical records. See Doe v. Southeastern Penn.

*Transp. Auth.,* 72 F.3d 1133, 1137 (3d Cir. 1995) (recognizing a privacy interest in prescription records and construing *Whalen,* 429 U.S. at 602, 97 S.Ct. 869, to do the same). This privacy interest stems from the fact that disclosure of a person's medical records implicates both the interest in avoiding disclosure of a patient's personal matters and the patient's interest in making certain kinds of important decisions independently and confidentially.[6]

■ This privacy interest, however, is neither an absolute right nor dispositive in all circumstances; it must be weighed against the government's interest in obtaining the records in particular circumstances. See *Whalen,* 429 U.S. at 602, 97 S.Ct. 869 (balancing possible harms against the state's interest in prescription drug reporting requirements); *Doe,* 72 F.3d at 1138 (balancing possible harms against an employer's need to access prescription records for the limited purpose of monitoring health care expenditures). In the case at bar, the government has demonstrated ample good cause for production of the medical records in question. It is clear from the government's *ex parte,* un-

---

**2.** The rule is different in civil cases where state law provides the rule of decision with respect to an element of a claim or defense: there the state law of privilege applies. See Fed.R.Evid. 501; *Republic Gear Co. v. Borg–Warner Corp.,* 381 F.2d 551 (2d Cir.1967) (finding that rules of privilege are substantive for *Erie* purposes).

**3.** *See Whalen v. Roe,* 429 U.S. 589, 602 n. 28, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) ("The physician-patient evidentiary privilege is unknown to the common law."); *Sneed v. Jones,* 991 F.2d 791, 1993 WL 107409 (4th Cir.1993) (unpublished) ("No physician-patient privilege existed at common law").

**4.** *See, e.g., Hardy v. Riser,* 309 F.Supp. 1234, 1237 (N.D.Miss.1970) ("[W]ith one or two rare judicially created exceptions, the privilege is a pure creature of statute."); 8 Wigmore on Evidence § 2380, at 820 (McNaught-

en Ed.1961 & Supp.2002) (canvassing state statutes on the physician-patient privilege).

**5.** *See, e.g., Sneed,* 1993 WL 107409 at *1, 991 F.2d 791 ("[N]o federal statute creates [a physician-patient] privilege."); *Hancock v. Dodson,* 958 F.2d 1367, 1373 (6th Cir.1992) ("[T]he federal courts do not recognize a federal physician-patient privilege."); *United States v. Burzynski Cancer Research Institute,* 819 F.2d 1301, 1311 (5th Cir.1988) ("In the context of federal criminal proceedings, no physician-patient privilege exists.").

**6.** *See Whalen,* 97 S.Ct. at 876–77 (citing cases). Medical information is inherently intimate and personal and "is precisely the sort [of information] intended to be protected by penumbras of privacy." *Doe,* 72 F.3d at 1138 (citing *Eisenstadt v. Baird,* 405 U.S. 438, 450, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972)).

der seal submission that the documents sought in the subpoena are relevant and material to an ongoing criminal investigation[7] and that this government interest outweighs the patients' privacy interest in the records in issue.

In an effort to bolster its argument that the patients' privacy interests in their medical records should be given conclusive weight here, the hospital points to the requirements of the Health Insurance Portability and Accountability Act of 1996 (HIPPA)[8] and the regulations promulgated thereunder by the Department of Health and Human Services.[9] This argument is unpersuasive, as the HIPPA regulations themselves make clear that any privacy interest patients have in their medical records is trumped by a grand jury subpoena that is "relevant and material to a legitimate law enforcement inquiry." 45 C.F.R. § 164.512(f)(1)(ii). The subpoena in issue plainly meets this requirement, as the government has demonstrated a compelling interest in obtaining access to the records it seeks in aid of an ongoing criminal investigation.

Although the result reached here requires production of the medical records sought, this does not mean that in all circumstances the government's interest in advancing an ongoing criminal investigation will always outweigh a patient's privacy interest in his medical records. There may be circumstances where a different result should obtain because a person's substantial privacy interest in certain medical records is not overcome by the government's interest in the contents of those records or perhaps requires the redaction of certain names or material. Those circumstances are not present here. Even so, it is worth noting that some measure of protection will be afforded the privacy interests of the patients whose records will be produced in this matter by virtue of the fact that "[t]he veil of secrecy attending grand jury proceedings will protect the disclosed information and will [restrict] its ... dissemination." *In re Zuniga*, 714 F.2d 632, 642 (6th Cir.1983); *see also* Fed. R.Crim.P. 6(e)(2) (mandating secrecy in grand jury proceedings).

In accordance with the reasons stated here, the hospital's motion to quash the subpoena must be denied and the hospital's alternative motion for an order compelling the production of the requested patient records will be granted.

---

7. It is worth noting that the government's *ex parte* description of the investigation makes clear the relevancy and materiality of all the information contained in the records sought. *See* United States *Ex Parte* Submission, *In re Grand Jury Subpoena John Doe No. A01–209* (filed Mar. 27, 2002).

8. 110 Stat.1936 (1996).

9. 45 C.F.R. pts. 160 & 164. The standards became effective April 14, 2001, but compliance is not required until April 14, 2003. *See* 45 C.F.R. § 164.534. The HIPPA regulations define the circumstances under which patient medical records may be disclosed by health plans, health care clearinghouses, and most health care providers. *See United States v. Sutherland*, 143 F.Supp.2d 609, 612 (W.D.Va. 2001) (discussing HIPPA and the HIPPA regulations).