# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

| | | |
|---|---|---|
| **In re AL** | **)** | **Misc. Dkt. No. 2022-12** |
| *Petitioner* | **)** | |
| | **)** | |
| | **)** | |
| | **)** | **ORDER** |
| | **)** | |
| | **)** | |
| | **)** | |
| | **)** | **Special Panel** |

On 21 October 2022, pursuant to Article 6b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 806b, and Rule 19 of the Joint Rules of Appellate Procedure for Courts of Criminal Appeals, Petitioner requested this court issue a stay of proceedings and a writ of mandamus in the pending court-martial of *United States v. Captain Theodore J. Slusher*. Petitioner is an alleged victim of charged offenses in the court-martial. On 24 October 2022, this court granted a stay of proceedings and ordered counsel for the Government and counsel for Captain Slusher (the Accused) to submit briefs in response to the petition. On 8 November 2022, the Government and the Defense submitted responsive briefs with certain attached documents. On 15 November 2022, Petitioner submitted a reply to the Government's response brief, and on 21 November 2022 Petitioner submitted a timely reply to the Defense's response brief.[1]

Having considered the petition, the responsive briefs, Petitioner's reply briefs, and the matters attached thereto, we grant the petition in part and deny it in part as specified below.

## I. BACKGROUND

The petition, responsive briefs, and reply briefs, with their several attachments, establish the following sequence of events.

On 4 May 2022, the convening authority referred for trial one charge and four specifications of violations of Article 120, UCMJ, 10 U.S.C. § 920; one charge and one specification of a violation of Article 120c, UCMJ, 10 U.S.C. § 920c; one charge and six specifications of violations of Article 128, UCMJ, 10

---

[1] Petitioner's deadline to file a reply to the Defense's brief was extended due to an error in the service of the Defense's response brief.

U.S.C. § 928; and one charge and one specification of a violation of Article 134, UCMJ, 10 U.S.C. § 934.

On 17 May 2022, trial defense counsel sent an initial discovery request to trial counsel, requesting production of, *inter alia*, "[a]ny relevant personnel, medical, and mental health records of any complaining witness . . . to include records in the possession of the Family Advocacy Program (FAP) . . . ." On 13 June 2022, the Defense sent a second discovery request to the Government.

On 16 June 2022, assistant trial counsel submitted a "Memorandum for Release of Healthcare Information" to a military treatment facility (MTF) located on Fort Bragg, North Carolina, requesting "all of [Petitioner]'s medical records for the period from 1 November 2017 – 16 May 2020." The memorandum asserted the "information sought [was] relevant and material to a legitimate law enforcement inquiry" and that examination of the records was "required as part of an official investigation."

On 27 June 2022, the MTF records custodian responded to assistant trial counsel's request and provided 575 pages of medical records, including 42 pages of FAP records.

On 21 September 2022, trial defense counsel filed a motion to compel production of, *inter alia*, "[a]ll of [Petitioner]'s medical records maintained by [Petitioner]'s unit," as well as mental health records.

On 2 October 2022, the Government submitted its response to the motion to compel, wherein trial counsel stated the Government had obtained Petitioner's "medical file from 1 November 2017 (earliest date of specifications) through 16 May 2020 (3 months following last alleged specification)." Trial counsel further stated the Government was preparing a redacted copy of the records for review by Petitioner's victims' counsel and, "if necessary," in camera review by the military judge. Trial counsel intended to leave unredacted those portions of the records relating to injuries to Petitioner's wrist allegedly caused by the Accused, "materials relating to consultations in which abuse is alleged," and "sufficient information to identify dates and locations of instances that [Petitioner] otherwise received medical consultations."

On 4 October 2022, the military judge held a hearing on the motion to compel. At the hearing, trial counsel restated that the Government was in possession of Petitioner's medical records, to include FAP records, and trial counsel had reviewed both sets of records. Trial counsel told the military judge that portions of Petitioner's medical records were "relevant" to the Defense's discovery request. According to a subsequent declaration by Major (Maj) DC, the detailed special trial counsel representing the Government at the hearing, Petitioner asserted through her counsel that the FAP records contained materials privileged under Military Rule of Evidence (Mil. R. Evid.) 513. According to

Maj DC, Petitioner did not assert the non-FAP medical records contained Mil. R. Evid. 513 material, or that any of the records contained material privileged under Mil. R. Evid. 514. Petitioner's counsel requested the military judge conduct an in camera review of the records to determine their relevance.

On 11 October 2022, the military judge issued a written ruling ordering the Government to provide all 575 pages of Petitioner's medical records to the Defense, without in camera review. The military judge explained:

> Government counsel acknowledged during the motions hearing that portions of the medical records are relevant in response to the defense discovery request and the [G]overnment had no objection to turning the records over to defense counsel.
>
> . . . .
>
> This court finds that the defense counsel has met their burden to show the information sought exists and is material to the preparation of the defense. [Petitioner's] counsel has requested that the Court review the medical records and FAP records in camera to determine relevancy. However, here, where the [G]overnment has reviewed the records, acknowledged the material is relevant, and has had the full benefit of reviewing the material, this Court finds that the [D]efense should not be denied the same opportunity of access. . . .
>
> Wherefore, the Defense Motion to Compel Discovery is **GRANTED**. The [G]overnment shall turn over [Petitioner's] medical records and the FAP records in their position [sic]. Before doing so, I am instructing the [G]overnment to redact the appropriate personally identifiable information in the records
> . . . .

The military judge denied a request by Petitioner's counsel to file a motion for reconsideration. In subsequent communications, the military judge clarified that the Prosecution was to turn over all of Petitioner's FAP records currently in its possession, and that the military judge would not perform an in camera review.

On 12 October 2022, Petitioner's counsel moved the trial court for a stay of proceedings and a protective order. On 13 October 2022, the military judge denied the motion to stay proceedings, but issued a protective order limiting the disclosure of the records in question to the Prosecution, defense counsel, expert consultants, Petitioner, and Petitioner's counsel. Eight days later, Petitioner filed the request for this court to issue a stay of proceedings and a writ of mandamus.

In addition to the stay of proceedings, which we previously granted, Petitioner has requested this court (1) vacate the military judge's ruling with respect to the 21 September 2022 defense motion to compel discovery; and (2) order the copies of the subject medical and FAP records be destroyed or, in the alternative, order the military judge to conduct in camera review "that will apply the standards of relevance and afford protections of Mil. R. Evid. 513 and [Mil. R. Evid.] 514."

## II. LAW

The All Writs Act, 28 U.S.C. § 1651(a), grants a Court of Criminal Appeals "authority to issue extraordinary writs necessary or appropriate in aid of its jurisdiction." *Chapman v. United States*, 75 M.J. 598, 600 (A.F. Ct. Crim. App. 2016) (citing *Loving v. United States*, 62 M.J. 235, 246 (C.A.A.F. 2005)). The purpose of a writ of mandamus is to "confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943) (citations omitted). In order to prevail on a petition for a writ of mandamus, the petitioner "must show that: (1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under the circumstances." *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012) (citing *Cheney v. United States Dist. Court*, 542 U.S. 367, 380–81 (2004)). A writ of mandamus "is a 'drastic instrument which should be invoked only in truly extraordinary situations.'" *Howell v. United States*, 75 M.J. 386, 390 (C.A.A.F. 2016) (quoting *United States v. Labella*, 15 M.J. 228, 229 (C.M.A. 1983)).

Article 6b(e)(1), UCMJ, 10 U.S.C. § 806b(e)(1), states:

> If the victim[2] of an offense under this chapter believes that . . . a court-martial ruling violates the rights of the victim afforded by a section (article) or rule specified in paragraph (4), the victim may petition the Court of Criminal Appeals for a writ of mandamus to require the . . . court-martial to comply with the section (article) or rule.

Article 6b(e)(4), UCMJ, provides that this right to petition the Court of Criminal Appeals for a writ of mandamus applies with respect to protections afforded by, *inter alia*, Article 6b, UCMJ; Mil. R. Evid. 513; and Mil. R. Evid. 514.

---

[2] Article 6b, UCMJ, refers to the rights of "victims" of offenses under the UCMJ, including at pretrial, trial, and post-trial phases of court-martial proceedings. The use of the term "victim" in this order reflects no determination or implication on the court's part as to the merits of the charged offenses in the Accused's court-martial.

Article 6b(a), UCMJ, provides that the victim of an offense under the UCMJ has, among other rights, "[t]he right to be treated with fairness and with respect for the dignity and privacy of the victim . . . ."

In general, disclosure to the defense of documents in the possession of the prosecution is governed by Rule for Courts-Martial (R.C.M.) 701, whereas production to the defense of documents not in the possession, custody, or control of military authorities is governed by R.C.M. 703. *See United States v. Bishop*, 76 M.J. 627, 634 (A.F. Ct. Crim. App. 2017); *see also United States v. Stellato*, 74 M.J. 473, 481 (C.A.A.F. 2015) (citing R.C.M. 701(a)(2)(A)). "Each party shall have adequate opportunity to prepare its case and equal opportunity to interview witnesses and inspect evidence . . . ." R.C.M. 701(e). "After service of charges, upon request of the defense, the Government shall permit the defense to inspect any . . . papers, documents, [or] data . . . if the item is within the possession, custody, or control of military authorities and [ ] the item is relevant to defense preparation." R.C.M. 701(a)(2)(A)(i). R.C.M. 703(e)(1) provides that, in general, "[e]ach party is entitled to the production of evidence which is relevant and necessary."

"A covered entity may use or disclose protected health information [without the individual's authorization or opportunity to object] to the extent that such use or disclosure is required by law and the use or disclosure complies with and is limited to the relevant requirements of such law." 45 C.F.R. § 164.512(a)(1).

Department of Defense Manual (DoDM) 6025.18, *Implementation of the Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule in DoD Health Care Programs* (13 Mar. 2019), provides procedures for Department of Defense (DoD) compliance with the privacy regulations adopted under HIPAA, Public Law 104-191, including at 45 C.F.R. § 164. DoDM 6025.18 ¶ 4.4.f.(1)(b)3 provides:

> A DoD covered entity may disclose [protected health information] [i]n compliance with, and as limited by, the relevant requirements of . . . [a]n administrative request, including an administrative subpoena or summons, a civil or an authorized investigative demand, or similar process authorized under law, if: [t]he information sought is relevant and material to a legitimate law enforcement inquiry[;] [t]he request is in writing, specific, and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought[; and] [d]e-identified information could not reasonably be used.

Article 46(a), UCMJ, 10 U.S.C. § 846(a), provides: "In a case referred for trial by court-martial, the trial counsel, the defense counsel, and the court-

martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." R.C.M. 703(g)(2) provides: "Evidence under the control of the Government may be obtained by notifying the custodian of the evidence of the time, place, and date the evidence is required and requesting the custodian to send or deliver the evidence."

Mil. R. Evid. 513(a) provides that, in general:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made between the patient and a psychotherapist or an assistant to the psychotherapist, in a case arising under the [UCMJ], if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition.

"Before ordering the production or admission of evidence of a patient's records or communication, the military judge must conduct a hearing, which shall be closed. . . . The patient must be afforded a reasonable opportunity to attend the hearing and be heard." Mil. R. Evid. 513(e)(2). "The military judge may examine the evidence or a proffer thereof in camera, if such examination is necessary to rule on the production or admissibility of protected records or communications." Mil. R. Evid. 513(e)(3). Mil. R. Evid. 514 provides a similar privilege and procedures with respect to confidential communications between an alleged victim and a victim advocate "made for the purpose of facilitating advice or assistance to the alleged victim." Mil. R. Evid. 514(a).

## III. ANALYSIS

The petition, responsive briefs, and Petitioner's replies require us to address three distinct issues: (1) whether an alleged victim's petition under Article 6b, UCMJ, must meet the usual standard of review for a petition for a writ of mandamus, or the lower standard of demonstrating the military judge abused his discretion; (2) whether Petitioner is entitled to relief based on her right to be treated with fairness and respect for her dignity and privacy under Article 6b(a), UCMJ; and (3) whether Petitioner is entitled to relief with respect to the privileges afforded by Mil. R. Evid. 513 or Mil. R. Evid. 514.

### A. Standard of Review

Petitioner contends this court should apply the ordinary standard of appellate review for a military judge's ruling regarding discovery: abuse of discretion. *See Stellato*, 74 M.J. at 480. The Government and Defense contend the appropriate standard is the three-part test for relief the United States Court of Appeals for the Armed Forces (CAAF) applied in *Hasan*, including Peti-

tioner's burden to demonstrate her entitlement to relief is "clear and indisputable." 71 M.J. at 418 (citation omitted). We find the standard for mandamus relief articulated in *Hasan* applies.

Petitioner notes that the version of the Crime Victims' Rights Act (CVRA) codified at 18 U.S.C. § 3771 and in effect prior to 2015 contained a provision analogous to Article 6b(e)(1), UCMJ, which enabled a crime victim who was denied relief in district court to "petition the court of appeals for a writ of mandamus." 18 U.S.C. § 3771(d)(3). Petitioner further notes there was a split among the federal circuits regarding whether to apply the usual strict standards for mandamus relief in the context of appellate review of a district court's ruling on rights under the CVRA. *Compare, e.g.*, *In re Dean*, 527 F.3d 391, 394 (5th Cir. 2008) (applying usual mandamus standards to CVRA appeal); *In re Antrobus*, 519 F.3d 1123, 1130 (10th Cir. 2008) (same); *with Kenna v. United States Dist. Court*, 435 F.3d 1011, 1017 (9th Cir. 2006) (declining to apply usual mandamus standards); *In re W.R. Huff Asset Mgmt. Co.*, 409 F.3d 555, 562–63 (2d Cir. 2005) (same). Petitioner argues the specific provision for mandamus review in Article 6b, UCMJ, is authority independent of this court's power under the All Writs Act upon which the United States Supreme Court's decision in *Cheney*, 542 U.S. at 380–81, and by extension the CAAF's decision in *Hasan*, were based. Therefore, she reasons, because Article 6b, UCMJ, does not specify a particular standard of review, the ordinary standards of appellate review should apply.

We are not persuaded. In May 2015, Congress revised 18 U.S.C. § 3771(d)(3) to add the following sentence regarding appeals of CVRA-related decisions: "In deciding such application, the court of appeals shall apply ordinary standards of appellate review." However, when Congress subsequently codified in Article 6b(e), UCMJ, a victim's right to petition the Court of Criminal Appeals for a writ of mandamus in November 2015, it did not mirror the language in the CVRA specifying "ordinary standards of appellate review;" nor have subsequent changes to the article inserted equivalent language. The implication is that Congress has provided different standards of review for 18 U.S.C. § 3771(d)(3) and Article 6b(e), UCMJ.

"[I]t's a 'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary . . . meaning . . . at the time Congress enacted the statute.'" *New Prime Inc. v. Oliveira*, ___ U.S. ___, 139 S. Ct. 532, 539 (2019) (alteration and omissions in original) (quoting *Wisconsin Central Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018)). In Article 6b(e), UCMJ, Congress specified that a victim may seek a "writ of mandamus" from the Court of Criminal Appeals. Giving effect to the plain meaning of the words of the statute and the longstanding standard for a petitioner to secure mandamus relief, we conclude Petitioner bears the burden to demonstrate: "(1) there

is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under the circumstances." *Hasan*, 71 M.J. at 418 (citation omitted); *see also In re HK*, Misc. Dkt. No. 2021-07, 2021 CCA LEXIS 535, at *3 (A.F. Ct. Crim. App. 13 Sep. 2021) (order) (following *Hasan* and applying the usual standard for mandamus relief to a petition filed pursuant to Article 6b(e), UCMJ).

## B. Article 6b(a), UCMJ, Right to Fairness and Respect for Dignity and Privacy

Petitioner asserts the military judge's ruling on the Defense's motion to compel violated her right to respect for her privacy under Article 6b(a), UCMJ. She contends the military judge ignored the fact that the Government unlawfully obtained her records, and the military judge erred by analyzing the motion as a matter of discovery under R.C.M. 701 rather than a matter of production under R.C.M. 703. Petitioner contends that the assistant trial counsel's 16 June 2022 memorandum to the MTF record custodian was inadequate authority for release of her records to the Prosecution, and that a court order or subpoena was required. She further contends that, although at the motion hearing she agreed with the Government that a portion of her records should be released to the Defense, the military judge's ruling that the Defense should receive all 575 pages of the records in trial counsel's possession without in camera review was improper. We find Petitioner has not demonstrated she is clearly and indisputably entitled to relief with respect to her Article 6b(a), UCMJ, right to respect for her privacy.[3]

As an initial matter, Petitioner asserts that she has a constitutional right to privacy that encompasses her confidential medical information. *See Doe v. Southeastern Pa. Transp. Auth.*, 72 F.3d 1133, 1137 (3d Cir. 1995) (interpreting *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977)); *A.L.A. v. West Valley City*, 26 F.3d 989, 990 (10th Cir. 1994) (citations omitted). However, such a right is not absolute and "must be weighed against the [G]overnment's interest in obtaining the records in particular circumstances." *In re Grand Jury Subpoena*, 197 F. Supp. 2d 512, 514 (E.D. Va. 2002) (citing *Whalen*, 429 U.S. at 602; *Doe*, 72 F.3d at 1138). Petitioner does not assert that HIPAA, its implementing regu-

---

[3] We emphasize that in accordance with Article 6b(e), UCMJ, the issue before us is Petitioner's request for relief with regard to the military judge's ruling on the Defense's motion to compel. The propriety of the means by which the Government obtained Petitioner's records from the MTF is not *directly* before us, and our conclusion that Petitioner has not met the high standard to demonstrate her entitlement to mandamus relief with regard to the subject ruling is not a decision as to whether, in other forums and under ordinary standards of review, Petitioner would be entitled to relief with regard to how her records were obtained from the MTF.

lations, or DoDM 6025.18, which govern access to protected health information, are unconstitutional in this respect. Accordingly, for purposes of our analysis of Petitioner's entitlement to relief under the "clear and indisputable" standard, we presume that government compliance with these directives would be sufficient to safeguard Petitioner's constitutional privacy interest in her medical records.

HIPAA permits disclosure of protected health information without the individual's consent or opportunity to object "to the extent that such use or disclosure is required by law and the use or disclosure complies with and is limited to the relevant requirements of such law." 45 C.F.R. § 164.512(a)(1). DoDM 6025.18, implementing HIPAA within the DoD, permits certain disclosures for "law enforcement purposes," including pursuant to an "administrative request" that is "authorized by law," provided the information sought is "relevant and material to a legitimate law enforcement inquiry;" the "request is in writing, specific, and limited in scope;" and "[d]e-identified information could not reasonably be used." DoDM 6025.18 ¶ 4.4.f.(1)(b)3. Article 46(a), UCMJ, provides trial counsel "shall have" the "opportunity to obtain . . . evidence in accordance such regulations as the President may prescribe." R.C.M. 703(g)(2) provides trial counsel may obtain "[e]vidence under the control of the Government" simply by "notifying the custodian of the evidence of the time, place, and date the evidence is required and requesting the custodian to send or deliver the evidence."

Assistant trial counsel's 16 June 2022 memorandum to the MTF records custodian specifically referred to HIPAA, asserted the request was relevant and material for a legitimate law enforcement purpose, was in writing and specifically requested records from a date range relevant to the charged offenses, and asserted de-identified information could not reasonably be used. The memorandum was evidently intended as an "administrative request" that satisfied the DoDM 6025.18 ¶ 4.4.f.(1)(b)3 law-enforcement exception. Moreover, because the records in question were possessed by an MTF on Fort Bragg, the records were "under the control of the Government," that is, an agency of the United States within the DoD. Therefore, under R.C.M. 703(g)(2)—that is, a regulation prescribed by the President—unlike evidence not under the control of the Government, it is not apparent that assistant trial counsel's request for the MTF records required a subpoena and related due process covered by R.C.M. 703(g)(3). Accordingly, we are not persuaded that Petitioner has clearly and indisputably demonstrated the Prosecution unlawfully obtained her medical records from the MTF in violation of her constitutional, statutory, or other privacy rights.

Assuming for purposes of argument that the Prosecution did improperly obtain Petitioner's records, we are not persuaded the military judge clearly and

indisputably erred by analyzing the Defense's motion to compel as a matter of discovery under R.C.M. 701 rather than a matter of production under R.C.M. 703. The military judge was presented with a situation in which, whether by proper or improper means, the Prosecution was in possession of and had reviewed the records. At the motion hearing, Petitioner and the Government evidently conceded at least some of the records should be disclosed to the Defense. This situation implicates R.C.M. 701. We need not decide and do not suggest the military judge lacked the authority or discretion to address Petitioner's concerns regarding how the Government obtained her records from the MTF, had Petitioner raised such concerns; however, that was not the issue before the military judge. The issue for the military judge was the Defense's request for access to relevant and material documents in the possession of the Prosecution.

Furthermore, in light of the protective order limiting access to defense counsel and expert consultants, we find Petitioner has not demonstrated she is clearly and indisputably entitled to relief on the basis of her right to respect for her privacy under Article 6b(a), UCMJ, in light of the military judge's decision to provide the records to the Defense without in camera review. Certainly, the military judge had the discretion to resolve the Defense's motion to compel in other ways, and we need not and do not specifically indorse his ruling. However, considering the Defense's right to access under R.C.M. 701(a)(2) and R.C.M. 701(e), we are not persuaded the military judge's decision to forego in camera review of all of the medical records was clearly and indisputably erroneous.

**C. Mil. R. Evid. 513 and Mil. R. Evid. 514**

In addition to her right for respect for her privacy under Article 6b, UCMJ, as discussed above, Petitioner invokes the "protections of Mil. R. Evid. 513 and [Mil. R. Evid.] 514."

With respect to Mil. R. Evid. 514, the matters provided by Petitioner, the Government, and the Defense do not substantiate that the medical and FAP records at issue contain confidential communications between an alleged victim and victim advocate that would be subject to the rule, or that Petitioner or either party represented to the military judge that they did. Accordingly, we find Petitioner has failed to demonstrate her clear and indisputable right to relief on the basis of Mil. R. Evid. 514.

However, we find Petitioner has demonstrated her entitlement to some relief with respect to Mil. R. Evid. 513. Maj DC's declaration confirms that Petitioner's counsel did assert to the military judge that the FAP records in particular contained material privileged under Mil. R. Evid. 513. The petition and the Government's brief both indicate that Mil. R. Evid. 513 was raised. The Defense states "neither Petitioner nor the Government made firm assertions

to the military judge that Petitioner's records included information subject to Mil. R. Evid. 513." However, the Defense does not deny Petitioner's counsel invoked Mil. R. Evid. 513 to some extent, and has not provided matter for our consideration that contradicts Maj DC's declaration. The military judge's ruling on the defense motion to compel is silent on the matter, and in fact does not refer to Mil. R. Evid. 513 at all. Although we have not requested or been provided a recording or transcript of the motion hearing itself, we find Maj DC's unimpeached declaration is a sufficient factual basis to conclude Petitioner's counsel asserted the FAP records contained Mil. R. Evid. 513 material.

Mil. R. Evid. 513(a) generally provides a patient "a privilege to refuse to disclose *and to prevent any other person from disclosing*" subject communications between the patient and psychotherapist or assistant. (Emphasis added). Certain enumerated exceptions exist, and the Courts of Criminal Appeals have suggested the continuing existence of a non-enumerated "constitutionally required" exception. *See United States v. Morales*, No. ACM 39018, 2017 CCA LEXIS 612, at *12–28 (A.F. Ct. Crim. App. 13 Sep. 2017) (unpub. op.). However, before a military judge orders "the production or admission of evidence of a patient's records or communication, the military judge *must* conduct a hearing, which shall be closed," where the patient "must be afforded a reasonable opportunity to attend . . . and be heard." Mil. R. Evid. 513(e)(2) (emphasis added). The matters before us establish the military judge ordered the disclosure of FAP records as to which Petitioner asserted the Mil. R. Evid. 513 privilege without holding the required closed hearing.

As noted above, the military judge's order did not address Mil. R. Evid. 513 at all. Therefore, we cannot be certain how the military judge analyzed the application of the rule. For purposes of our analysis, we considered that one might subject the term "production" to a narrow interpretation echoing the distinction in R.C.M. 701 and R.C.M. 703 between "discovery" and "production." Thus, one might argue that discovery from one party to another under R.C.M. 701 is distinct from "production" and does not trigger the application of Mil. R. Evid. 513(e)(2). However, we find such a cramped interpretation of "production" and the application of Mil. R. Evid. 513(e)(2) is not appropriate. The core privilege established by Mil. R. Evid. 513(a) broadly empowers a patient to prevent any disclosure from one person to another, and the military judge's ruling purported to compel such a disclosure. *See United States v. Beauge*, 82 M.J. 157, 161 (C.A.A.F. 2022) ("[Mil. R. Evid.] 513(e) provides the procedure that must be followed when a party seeks to *discover* information pursuant to any of the enumerated exceptions." (Emphasis added).).

Accordingly, we conclude Petitioner has clearly and indisputably demonstrated she is entitled to relief with respect to Mil. R. Evid. 513 and the FAP records. Moreover, we find there is no other adequate means to secure relief,

as Congress has specifically authorized Petitioner to seek mandamus relief from this court for a military judge's ruling affecting protections afforded her by Mil. R. Evid. 513. Furthermore, we find the issuance of such a writ is appropriate under the circumstances.

Accordingly, it is by the court on this 7th day of December, 2022,

**ORDERED:**

Petitioner's petition for extraordinary relief in the nature of a writ of mandamus is **GRANTED IN PART** and **DENIED IN PART**. The military judge's 11 October 2022 ruling granting the defense motion to compel discovery is **SET ASIDE IN PART**, specifically with respect to the FAP records in the Government's possession. The defense motion to compel discovery remains pending before the military judge with regard to the FAP records in the Government's possession.

The stay of proceedings issued by this court on 24 October 2022 is hereby **REMOVED**. Court-martial proceedings may resume consistent with this order and with Mil. R. Evid. 513.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court